1

2  Anton Ewing
   3077 B Clairemont Drive #372
3  San Diego, CA 92117
   (619) 719-9640
4  anton@antonewing.com

5

6  Plaintiffs in Pro Per

7

8

9

10         THE UNITED STATES FEDERAL DISTRICT COURT

11              SOUTHERN DISTRICT OF CALIFORNIA

12

13  Anton Ewing, an individual,          )  Civil Case No.  '18CV2247 CAB MDD
14              Plaintiff,               )
                                         )  COMPLAINT
15     vs.                               )
                                         )
16                                       )
17  Encor Solar, LLC, a Utah limited     )  TCPA 47 USC §227(b)(1)(A)
    liability company;                   )  TCPA 47 USC §227(c)(5)
18  Daniel Larkin, an individual and officer )  CIPA PC §637.2 and §637.2
    of Encor Solar, LLC;                 )  UCL B&P §17200
19  Garrett Smith, an individual and     )
20  manager of Encor Solar, LLC;         )
                                         )
21                                       )
22  Sunrun, Inc., a Delaware corporation; )
                                         )
23  Bargain Electricity, Inc, a Florida  )
24  corporation;                         )
    Reinaldo A. Berges, aka Ray Alonso, an )
25  individual and officer of Bargain    )
    Electricity, Inc.                    )
                Defendants.              )
                                         )
                                         )
                                         )

PLAINTIFF'S COMPLAINT FOR VIOLATIONS UNDER TCPA - 1

**FILED**

Sep 27 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY        s/jenniferm        DEPUTY

May it please the Court, Plaintiff Anton Ewing (herein "Plaintiff" or "Ewing"), for this complaint against Defendant Encor Solar, LLC and its present, former and future direct and indirect parent companies, subsidiaries, affiliates and agents ("Encor Solar"), Daniel Larkin, an individual and officer of Encor Solar, LLC ("Larkin"), Garrett Smith, an individual ("Smith"), Sunrun, Inc, a Delaware corporation ("Sunrun"), Bargain Electricity, Inc, a Florida corporation ("Bargain"), Reinaldo A. Berges, also known as Ray Alonso, an individual and officer of Bargain Electricity, Inc. ("Berges"), alleges as follows:

## I.   INTRODUCTION

1.     The TCPA causes of action (47 USC §227(b) and (c)) filed herein for, *inter alia*, illegal telemarketing to Plaintiff's DNC  registered cellular phone and home phone through the use of an ATDS is expressly alleged against Defendants Encor Solar, LLC and its present, former and future direct and indirect parent companies, subsidiaries, affiliates and agents, Daniel Larkin, an individual and officer of Encor Solar, LLC, Garrett Smith, an individual, Sunrun, Inc, a Delaware corporation, Bargain Electricity, Inc, a Florida corporation ("Bargain"), and Reinaldo A. Berges, also known as Ray Alonso, an individual and officer of Bargain Electricity, Inc. ("Berges").

2.     The CIPA cause of action (PC §§§632, 637.2, 632.7) filed herein for illegal recording of the telemarketing call to Plaintiff's phone without disclosure of the

recording is alleged against Defendants Encor Solar, LLC and its present, former and future direct and indirect parent companies, subsidiaries, affiliates and agents, Daniel Larkin, an individual and officer of Encor Solar, LLC, Garrett Smith, an individual, Sunrun, Inc, a Delaware corporation, Bargain Electricity, Inc, a Florida corporation ("Bargain"), and Reinaldo A. Berges, also known as Ray Alonso, an individual and officer of Bargain Electricity, Inc. ("Berges").

3.     <u>Nature of Action</u>. Something is rotten in Utah and Florida, to wit: Encor Solar, LLC and Bargain Electricity, Inc., working together and in concert, have been bombarding Mr. Ewing, without his consent, with autodialed and prerecorded calls ("robocalls") as well as "live-transfer" calls using an ATDS at defined by the 9th Circuit in the *Crunch* case..  Mr. Ewing begged Encor Solar and Bargain Electricity, Inc to stop these illegal calls, but since then, Defendant Encor and its hired and controlled agents have robocalled Plaintiff dozens more times. Mr. Ewing brings this action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), in hopes that an injunction and damages will encourage Encor Solar, Sunrun and Bargain Electricity to change their ways.

## II. PARTIES

4.     Plaintiff Anton Ewing is a citizen of California who conducts business in California, in this District.

5.     Defendant Encor Solar, LLC is a limited liability company organized under

the laws of the State of Utah with its principal place of business at 3401 North

Thanksgiving Way, Suite 450, Lehi, Utah 84043. Encor Solar does business in this

District and throughout the United States.

6.    Daniel Larkin is the president, CEO, Manager, Member, director, officer,

and alter ego of Encor Solar.  Larkin does not respect the Encor formalities of

entity operation and therefore he is not protected by its veil.  Lark is a citizen of

Utah.

7.    Garrett Smith, is an individual, employee and agent of Encor Solar.  During

2018, Smith performed telemarketing activities by, for and on behalf of Encor

Solar at the direction and control of Larkin.  Smith owns, controls and uses phone

number 805-490-5030 to engage in his scam telemarketing on behalf of his

employer, Encor Solar.  Smith is a citizen of California.

8.    Sunrun, Inc., is a Delaware corporation that has knowingly and intentionally

hired, directed and ordered Larkin, Encor and Smith to obtain solar panel leads and

appointments through telemarketing activities in violation of the TCPA, CIPA and

extortion laws of California.  Sunrun is currently being sued in a TCPA class

action in the Central District of California in 18cv-01207-JGB-SHK.

9.    Bargain Electricity, Inc, is a Florida corporation with offices at 2350 SW

18th Terrace, Fort Lauderdale, Florida 33315.

10.    Reinaldo A. Berges, is also known as Ray Alonso in the telemarketing

world, is the owner, officer, director and shareholder of Bargain Electricity, Inc.

He runs Bargain as his alter ego and does not respect the form of the entity.

## III. JURISDICTION AND VENUE

11.   Jurisdiction. This Court has federal-question subject matter jurisdiction over the Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over the Plaintiffs' claim arising under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, Civil Code §1770(a)(22)(A),  and California Invasion of Privacy Act, Penal Code §637.2, §632.7 because those claims:

> a.  arises from the same nucleus of operative fact, i.e., Defendant's
>
>    telemarketing robocalls to Plaintiff;
>
> b.  adds little complexity to the case; and
>
> c.  relies on the same nucleus of facts, so it's unlikely to predominate
>
>    over the TCPA claims.

12.   Personal Jurisdiction. This Court has personal jurisdiction over Encor Solar because a substantial part of the wrongful acts alleged in this Complaint were committed in California. For example, Encor Solar made illegal telemarketing robocalls to Mr. Ewing, while he was in California.   Larkin, who is the officer, director, member and manager of Encor, has also subjected himself to personal

jurisdiction in California because he is running said criminal operation.  It is a crime to violate 47 USC §501 by violating 47 USC §227(b).  Smith is a resident of San Diego.  Sunrun is registered to do business in California and knowingly directed Encor to engage in illegal telemarketing in violation of the TCPA.  Bargain initiated the primary telemarketing calls to Plaintiff and then sold, transferred and provided the lead to the other defendants in this matter in a knowingly illegal manner.

13.    "Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006); *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdiction analyses under state law and federal due process are the same." *Yahoo!*, 433 F.3d at 1205 (citing *Panavision*, 141 F.3d at 1320). Due process requires that Defendants must have minimum contacts with the forum such that the assertion of jurisdiction in that forum "'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2005) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

14.    There are two types of personal jurisdiction: general and specific. *Daimler*

*AG v. Bauman*, 134 S. Ct. 746, 754-55, 187 L. Ed. 2d 624 (2014). "For general

jurisdiction to exist over a nonresident defendant . . . , the defendant must engage

in 'continuous and systematic general business contacts,' that 'approximate physical

presence' in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d

797, 801 (9th Cir. 2004) (quoting *Helicopteros Nacionales de Colombia, S.A. v.*

*Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); *Bancroft &*

*Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)) (internal

citations omitted).  To establish specific jurisdiction, Plaintiff must show: "(1) [t]he

non-resident defendant . . . purposefully direct[ed] [its] activities or consummate[d]

some transaction with the forum or resident thereof; or perform some act by which

[it] purposefully avail[ed] [itself] of the privilege of conducting activities in the

forum, thereby invoking the benefits and protections of its laws; (2) the claim must

be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice,

i.e. it must be reasonable." *Id*. at 802.  At least two courts in the 9th have found

specific jurisdiction in circumstances similar to this case. One court found personal

jurisdiction where the out-of-state defendant sent numerous unsolicited fax

advertisements to a California-based plaintiff. *Global Commc'ns, Inc. v. Blue Jay,*

*Inc.*, No. C 08-4254 PJH, 2009 U.S. Dist. LEXIS 1616, 2009 WL 29905, at *2, 8-

10 (N.D. Cal. Jan. 5, 2009). Another court found personal jurisdiction where the

defendant operated a website that the California-plaintiff used, called and emailed the plaintiff numerous times, and the plaintiff's claims arose out of those contacts. *Heidorn v. BDD Mktg. & Mfg. Co., LLC*, No. C-13-00229 JCS, 2013 U.S. Dist. LEXIS 177166, 2013 WL 6571629, at *8 (N.D. Cal. Aug. 19, 2013). *Drew v. Lexington Consumer Advocacy, LLC*, No. 16-cv-00200-LB, 2016 U.S. Dist. LEXIS 52385, at *4-7 (N.D. Cal. Apr. 18, 2016)

15.    Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims occurred in this District and because Defendant Smith resides in, i.e., is subject to personal jurisdiction in, this District.  Moreover, Sunrun and Encor are registered with the California Secretary of State and do substantial business in this District.  Bargain has purposefully directed its activities to California and advertises that it does business in California on its web page at www.bargainelectricty.com.

**IV. TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**

16.    In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

17.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice… to any telephone number assigned to a … cellular telephone service." 47 U.S.C.

§227(b)(1)(A)(iii).

18.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

19.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

20.     The TCPA makes it unlawful to make telemarketing solicitations to telephone numbers on the National Do Not Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

21.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c). 47 U.S.C. § 227(c)(5).

22.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

23.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and*

*Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd.

14014, 14115 ¶ 165 (2003).

24.     The FCC requires "prior express written consent" for all autodialed or

prerecorded telemarketing robocalls to wireless numbers and residential lines. In

particular:

> [A] consumer's written consent to receive telemarketing robocalls
> must be signed and be sufficient to show that the consumer: (1)
> received clear and conspicuous disclosure of the consequences of
> providing the requested consent, *i.e.*, that the consumer will receive
> future calls that deliver prerecorded messages by or on behalf of a
> specific seller; and (2) having received this information, agrees
> unambiguously to receive such calls at a telephone number the
> consumer designates. In addition, the written agreement must be
> obtained without requiring, directly or indirectly, that the agreement
> be executed as a condition of purchasing any good or service. *In the
> Matter of Rules & Regulations Implementing the Tel. Consumer Prot.
> Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and
> internal quotation marks omitted).

25.     FCC regulations "generally establish that the party on whose behalf a

solicitation is made bears ultimate responsibility for any violations." *In the Matter

of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10

FCC Rcd. 12391, 12397 ¶ 13 (1995).

26.     The FCC confirmed this principle in 2013, when it explained that "a seller

… may be held vicariously liable under federal common law principles of agency

for violations of either section 227(b) or section 227(c) that are committed by

third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

27.     The 9th Circuit has defined an ATDS as follows: "we conclude that the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a "random or sequential number generator," but also includes devices with the capacity to dial stored numbers automatically. Accordingly, we read § 227(a)(1) to provide that the term automatic telephone dialing system means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers."

28.     Senator Fritz Hollings complained, "[c]omputerized calls are the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. S16,205 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings). Recipients deemed that "automated telephone calls that deliver an artificial or prerecorded voice message are more of a nuisance and a greater invasion of privacy than calls placed by 'live' persons." S. Rep. No. 102-178, at 4.

29.     The plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability."

*Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556). The Federal Communications Commission ("FCC")—which has authority to implement the TCPA's provisions, *see* 47 U.S.C. § 227(b)(2)— has stated that a plaintiff, to establish a TCPA violation, "need only show that [the Defendant] called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012). Because the Defendants have violated multiple subsections of 47 U.S.C. §227, including but not limited to 47 U.S.C. §227(b)(1)(A) and §227(c), then Defendants, and each of them, have committed the criminal violation of 47 U.S.C. §501.

30.     "[P]rior express consent is an affirmative defense, not an element of the claim," meaning a plaintiff "need not plead that he did not give his prior express consent." Manfred v. Bennett Law, PLLC, No. 12–CV–61548, 2012 WL 6102071, at *2 (S.D. Fla. Dec. 7, 2012). Rather, "[t]he only thing [a] [p]laintiff must plead to establish a violation of the TCPA is that the [d]efendants left voicemail messages at a number assigned to a cellular telephone service using an automatic dialing system or an artificial or pre-recorded voice." Id. (denying motion to dismiss for failure to state a claim where the plaintiff alleged "that [the] [d]efendants used an Automatic Telephone Dialing System or an artificial or pre-recorded voice to place the telephone calls to [the] [p]laintiff's cellular phone.").

31.    Plaintiff Ewing alleges that Defendants placed repeated automated telephone calls to Plaintiff Ewing's cell phone (619-719-9640) from Defendant's phones and that the calls exhibited signs of being made with an Automated Telephone Dialing System, including repeated telemarketing calls to Plaintiff Ewing within a period of time and the presence of a pause or click (which is proven by the recording), which is commonly associated with an Automated Telephone Dialing System (ATDS).  Those allegations are true and are sufficient to establish the elements of a TCPA claim.  Defendant Encor's telemarketing agent also admitted on the call that they used an ATDS to initiate the dialing of the call to Plaintiff Ewing.

32.    ABC, Inc (a Doe Defendant to be named after discovery reveals the same) that was hired by Encor and Sunrun to knowingly and intentionally make robo-dialed calls to Plaintiff Ewing with a pre-recorded voice message that was used for telemarketing purposes between June 1, 2017 and September 27, 2018.  ABC, Inc has subsequently made illegal telemarketing calls to Ewing and discovery may very well lead to adding ABC, Inc as a defendant herein.

33.    California Civil Code section 1770(a)(22)(A) prohibits prerecorded telemarketing messages.

34.    As Judge Easterbrook of the Seventh Circuit recently explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act...is well known for its provisions limiting junk-fax transmissions.  A less-litigated

PLAINTIFF'S COMPLAINT FOR VIOLATIONS UNDER TCPA - 13

18CV

part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered--and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.
*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012)

35.    As the Court unanimously held in *Haines v. Kerner*, 404 U.S. 519 (1972), a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id., at 520-521, quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)." *Estelle v. Gamble* (1976) 429 U.S. 97, 106 [97 S.Ct. 285, 292, 50 L.Ed.2d 251, 261].

## V. STANDING

36.    The court must evaluate lack of statutory standing under the Rule 12(b)(6) standard. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). However, because Plaintiffs are proceeding pro se, their complaint "must be held to less stringent standards than formal pleadings drafted by lawyers" and must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (reaffirming standard reviewing pro se complaints post-*Twombly*). The Ninth Circuit has concluded that the court's treatment of pro se filings after *Twombly* and *Iqbal* remain the same and pro se pleadings must continue to be liberally

construed. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); see also *McGowan v. Hulick*, 612 F.3d 636, 640-42 (7th Cir. 2010); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461-62 (5th Cir. 2010); *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (noting that even following *Twombly* and *Iqbal*, "we remain obligated to construe a pro se complaint liberally").

37.     Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

    A. A valid injury in fact;

    B. which is traceable to the conduct of Defendants;

    C. and is likely to be redressed by a favorable judicial decision.  See
        *Spokeo, Inc. v. Robins*, 578 U.S.____(2016) at 6, and *Lujan v. Defenders of Wildlife*, 504 U.S. 555 at 560.  In order to meet the standard laid out in
        *Spokeo* and *Lujan*, Plaintiffs must clearly allege facts demonstrating all
        three prongs above.

**The "Injury in Fact" Prong.**

38.     Plaintiff's injury in fact, must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo (*Id.). For an injury to be "concrete," it must be a de facto injury, meaning that it actually exists.  In the present case, Plaintiff was called on his cellular phone at least thirteen (13) times by Defendants.  In fact, Plaintiff expressly informed

Defendants to cease and desist from all future telemarketing on the very first call. Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiff in multiple ways. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). Defendant's invasion of Plaintiff's right to privacy is further exacerbated by the fact that Plaintiff's phone number, at all times relevant to this litigation, was on the National Do-Not-Call Registry ( hereinafter, "DNC Registry"). As well, Plaintiff had no prior business relationship with Defendants prior to receiving the seriously harassing and annoying calls as well as the extortionate threats by Larkin. All of Plaintiff's injuries are concrete and de facto. For an injury to be "particularized" means that the injury must "affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 135 S.Ct. 1540, *578 U.S. ___ (2016)* at 14.

In the instant case, it was Plaintiff's phone that was called and it was Plaintiff who answered the calls. It was Plaintiff's personal privacy and peace that was invaded by Defendant's persistent phone calls using an ATDS and a pre-recoded message, despite Plaintiff having no prior business relationship with Defendants and Plaintiff's attempt to avoid the damage by registering his number on the DNC Registry. Additionally, Plaintiff Ewing has a clear warning on each and every page of his web domain that warns offenders that if you call, you will be sued. In fact, Ewing had to remove his own phone number from his web page several years ago (please go ahead and verify this on the waybackmachine[1]) due

---

[1] Exact copy of web page in 2015:

the incessant, annoying and harassing calls by scam telemarketers like these

defendants.  Moreover, a simple Google search of Ewing's phone number will

yield page after page of warnings that threaten a civil suit if you call.  And, Ewing

has sent out hundreds of emails to TCPA defense attorneys nationwide warning

them that if their clients call Ewing's phone, they will be sued.  Finally, Plaintiff is

responsible to pay the bill on his cellular phone, and to pay the bill for the electric

utility company kilowatt-hour power usage to recharge it. All of these injuries are

particularized and specific to Plaintiff and will be the same injuries suffered by

Plaintiff.

**The "Traceable to the Conduct of Defendants" Prong**

39.    The second prong required to establish standing at the pleadings phase is

that Plaintiff must allege facts to show that their injury is traceable to the conduct

of Defendants. In the instant case, this prong is met by the fact that the calls to

Plaintiff's cellular phone and home phone (land line) were placed either by

Defendants directly, or by Defendants' agent at the express direction and control of

Defendants.   See *Jones v. Royal Admin. Servs., 866 F.3d 1100 (9th Cir. 2017)* ten

factor test[2] from the 9th Circuit and Civil code §2307.

---

https://web.archive.org/web/20151109045712/http://www.antonewing.com:80/contact

[2] 1) the control exerted by the employer, 2) whether the one employed is engaged in a distinct occupation, 3) whether the work is normally done under the supervision of an employer, 4) the skill required, 5) whether the employer supplies tools and instrumentalities [and the place of work]. 6) the length of time employed, 7) whether payment is by time or by the job, 8) whether the work is in the regular business of the employer, 9) the subjective intent of the parties, and 10) whether the employer is or is not in business.

PLAINTIFF'S COMPLAINT FOR VIOLATIONS UNDER TCPA - 17

18CV

**The "Injury is Likely to be Redressed by a Favorable Judicial Opinion"**

**Prong**

40.     The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion. In the present case, Plaintiff's Prayers for Relief includes a request for damages for each call made by Defendants, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff.  Furthermore, Plaintiff's Prayers for Relief request injunctive relief to restrain Defendants from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past and prevent further injury in the future. Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins*, 578 U.S. ___ (2016), Plaintiff has standing to sue Defendants on the stated claims.

41.     "…[C]ourts in the Ninth Circuit have held that "allegations of nuisance and invasions of privacy in TCPA actions are concrete" injuries that establish standing. See *Mbazomo v. ETourandtravel, Inc.*, 16-CV-2229-SB, 2016 U.S. Dist. LEXIS 170186, 2016 WL 7165693, at *2 (E.D. Cal. Dec. 8, 2016).  In *Mbazamo*, the court held that a violation of the TCPA represents a concrete injury because "[t]he history of sustaining claims against both unwelcome intrusion into a plaintiff's

seclusion and unceasing debt-collector harassment are squarely 'harm[s] that [have] traditionally been regarded as providing a basis for a lawsuit.'" Mbazomo, 2016 U.S. Dist. LEXIS 170186, 2016 WL 7165693, at *2 (quoting *Spokeo*, 136 S.Ct. at 1549-50). The court declined to follow Romero, explaining that Romero "improperly erodes the pleading standard set under Fed. R. Civ. P. 8(a) . . . . A plaintiff [need only] plausibly tie the alleged acts of the defendant to the alleged harms suffered." Id. *Messerlian v. Rentokil N. Am., Inc.* (C.D.Cal. Dec. 15, 2016, No. CV 16-6941-GW (GJSx)) 2016 U.S.Dist.LEXIS 175224, at *7-8.

42.    "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*. at 1548 (quoting *Lujan*, 504 U.S. at 560). The Supreme Court noted that concreteness is quite distinct from particularization. *Id*. An injury is "particularized" if it affects "the plaintiff in a personal and individual way." *Id*. In addition, for an injury to be "concrete", it must be "de facto," meaning that it is "real" and not "abstract." *Id*. However, an injury need not be "tangible" in order to be "concrete," and intangible injuries may constitute injury in fact. *Id*. at 1549. In order to determine whether an intangible harm constitutes injury in fact, *Spokeo* provided two factors to be considered: "history and the judgment of Congress." *Id*. at 1549. Specifically, "(1) whether the statutory violation bears a 'close relationship to a harm that has

traditionally been regarded as providing a basis for a lawsuit in English or American courts,' and (2) congressional judgment in establishing the statutory right, including whether the statutory right is substantive or procedural." *Matera v. Google*, No. 15cv 4062-LHK, 2016 WL 5339806, at *9 (N.D. Cal. Sept. 23, 2016). *Spokeo* also held that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo*, 136 S. Ct. at 1549.  In such a case, a plaintiff "need not allege any additional harm beyond the one [the legislature] has identified." *Id.*

43.     The TCPA provides a private right of action for violations of § 227(b) and the associated regulations. 47 U.S.C. § 227(b)(3).  Subsection (b) prohibits calls (other than for an emergency) to a telephone number assigned to a cellphone by way of an automatic telephone dialing system ("ATDS") without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii).  In the Ninth Circuit, a plaintiff must show: (1) "the defendant called a cellular telephone number; (2) "using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).  A plaintiff must also be a "called party" within the definition of the TCPA. *Charkchyan v. EZ Capital*, No. 2:14-cv-03564-ODW (ASx), 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315, at *3 (C.D. Cal. June 11, 2015)

44.     First, a text message and a prerecorded robotic voice message call are both a "call" for purposes of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952-54 (9th Cir. 2009).  Plaintiff supports these allegations with activity logs from July 2017 to September 2018 documenting the 13 calls. This element is satisfied.

45.     Second, Plaintiff adequately pleads use of an automatic telephone dialing system ("ATDS").  The TCPA defines ATDS to mean "equipment which has the capacity — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The focus of the inquiry is on the equipment's *capacity* to perform this function. *See Satterfield*, 569 F.3d at 951.  "Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." *Id.* Defendants called with a prerecorded message, which, by definition requires an auto-dialer that operates without human intervention.

46.     "In proving a defendant's use of [an] ATDS under the TCPA, courts have recognized the difficulty a plaintiff faces in knowing the type of calling system the defendant used without the benefit of discovery." *Charkchyan,* 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3.  For example, in *Charkchyan*, the plaintiff's allegations supported the use of an ATDS. *Id.*  In that case, the plaintiff

PLAINTIFF'S COMPLAINT FOR VIOLATIONS UNDER TCPA - 21

described the messages received "as being formatted in SMS short code, '670-76,'" and as being impersonally scripted. *Id.* This was enough to establish the defendant used an ATDS. *Id.* Similarly, in *Kramer v. Autobytel*, the plaintiff alleged sufficient facts to support a reasonable inference that the defendants used an ATDS: "[The plaintiff] described the messages from SMS short code 77893, a code registered to [a defendant]. The messages were advertisements written in an impersonal manner. [And,] [the plaintiff] had no other reason to be in contact with the Defendants." 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010). In contrast, the plaintiff in *Williams v. T-Mobile USA, Inc.* failed to plead more than "legal conclusions couched in fact" when asserting the "barrage of calls and . . . frequency and pattern of the calls provide[d] the necessary factual support." No. 15-cv-3384-JSW, 2015 U.S. Dist. LEXIS 140077, 2015 WL 5962270, at *2-3 (N.D. Cal. Oct. 14, 2015). *See also Daniels v. ComUnity Lending, Inc.*, No. 13cv488-WQH-JMA, 2014 U.S. Dist. LEXIS 1606, 2014 WL 51275, at *5 (S.D. Cal. Jan. 6, 2014) (ATDS use not plausible because the allegations indicated the defendants directed calls specifically towards the plaintiff).

47.     Here, Plaintiff alleges that Defendants contacted him using a "telephone dialing system." This is insufficient standing alone, but as in *Charkchyan* and *Kramer*, Plaintiff alleges sufficient additional facts. First, each of the calls are available to the Court as audio recordings of the robotic voice message that

initiated the calls. Second, the calls are impersonal advertisements: they do not address Plaintiff personally and they advertise Defendant's product. Third, Plaintiff declares that he has never heard of Defendants, visited any location operated by Defendants prior to the harassing and annoying calls, nor provided his cellular telephone numbers to Defendants or consented to receive calls from Defendants. Plaintiff also has had no prior business relationship with Defendants. Plaintiffs had no reason to be in contact with Defendants nor have they ever purchased any kind of product or service. Plaintiff's allegations are sufficient to establish that Defendants used ATDS in sending their prerecorded solicitation messages.

48.     Third, Plaintiff adequately pleads that the conduct was without his prior express consent. "Prior express consent" under the TCPA is "consent that is clearly and unmistakably stated." *Satterfield*, 569 F.3d at 955; *Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at \*3. Moreover, "[t]he Federal Communications Commission ('FCC'), tasked with instituting implementing regulations for the TCPA, added an express *written* consent requirement in the case of messages that 'include[] or introduce[] an advertisement or constitute[] telemarketing.'" *Meyer v. Bebe Stores, Inc.*, No. 14-cv-00267-YGR, 2015 U.S. Dist. LEXIS 12060, 2015 WL 431148, at \*3 (N.D. Cal. Feb. 2, 2015) (citing 47 C.F.R. § 64.1200(a)(2)). An "advertisement" includes "any material advertising the commercial availability or quality of any property, goods, or services." 47

C.F.R. § 64.1200(f)(1).  "Telemarketing" means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id.* § 64.1200(f)(12).  Establishing prior express consent of the called party "is an affirmative defense for which the defendant bears the burden of proof." *Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3.

49.     In *Charkchyan*, the plaintiff did not give prior express consent. *Id.* There, the plaintiff claimed: "(1) he [was] the current subscriber to the cellular telephone at issue; (2) he [had] never heard of [the defendant]; (3) he [had] never visited any location operated by [the defendant]; and (4) he [had] never provided his cellular number to [the defendant], nor consented to receiving calls from [the defendant]." *Id.*  Where the defendant failed to provide any conflicting evidence, this was sufficient. *Id.*

50.     Similarly, in Plaintiff's case, the allegations establish that he did not give prior express consent.  He declared that he was "the regular user and subscriber to the cellular telephone number at issue."  He also declared that he has "never heard of [Defendants], visited any location operated by [Defendants], provided [his] cellular telephone number to [Defendants,] or consented to receive text messages from [Defendants]."  As in *Charkchyan*, these allegations are sufficient to support Plaintiff's claims that he did not give prior express consent authorizing Defendants

to send the prerecorded messages. Furthermore, the calls promote the sender's illegal solar panel business and fall within the FCC's definition of an advertisement and/or telemarketing. Thus, express written consent was required, and there is no evidence of such. This element is consequently satisfied.

51.     Fourth, Plaintiff sufficiently pleads that he was the "called party." To have standing under the TCPA, a plaintiff must be the "called party." *See Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3, *4; 47 U.S.C. § 227(b)(1)(A). A telephone service subscriber is the "called party" within the meaning of the TCPA. *Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3; *Gutierrez v. Barclays Group*, No. 10cv1012 DMS (BGS), 2011 U.S. Dist. LEXIS 12546, 2011 WL 579238, at *4 (S.D. Cal. Feb. 9, 2011). Here, Plaintiff declares that he was "the regular user and subscriber to the cellular phone number" that received the calls and messages.  Plaintiff is therefore the "called party." *See Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3. *Drew v. Defendants Consumer Advocacy, LLC*, No. 16-cv-00200-LB, 2016 U.S. Dist. LEXIS 52385, at *11-16 (N.D. Cal. Apr. 18, 2016)

18CV

# VI. FACTUAL ALLEGATIONS

## A. Encor Solar, LLC

52.    One of Encor Solar's strategies for marketing its services is placing telemarketing robocalls to those who have not consented to receive such solicitations, including Plaintiff.

53.    On information and belief, Encor Solar uses equipment that has the capacity to store or produce random or sequential telephone numbers to be called and that includes autodialers and predictive dialers (each an "automatic telephone dialing system" or "ATDS").

54.    Bargain sold leads to Encor and Smith, and Encor is the marketing agent for Sunrun.  Bargain knowingly advertises for Sunrun.  Each Defendant knows of and in aware of each of the other Defendant's duties, responsibilities and function within the telemarketing operation.  Each Defendant is a co-conspirator with each other Defendant in this matter.  They all know each other, they all talk to eachother.  They have all designed, planned and orchestrated the telemarketing scheme and scam together.

## B. Plaintiff

55.    Plaintiff Anton Ewing is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

## C. Telephone numbers 619-719-9640 and 619-987-2016

18CV

56.     A phone number beginning 619-719-9640 and 619-987-2016 is registered to

Mr. Ewing.

57.     619-719-9640 and 619-987-2016 are on the National Do Not Call Registry.

58.     619-987-2016 is registered to a residential telephone service.

59.     Mr. Ewing answers calls made to 619-719-9640 and 619-987-2016.

60.     Mr. Ewing pays the phone bills for 619-719-9640 and 619-987-2016.

**F. Encor Solar's Illegal Telemarketing Robocalls to Plaintiff**

61.     On September 26, 2018, a call to 619-719-9640, which is Mr. Ewing his

cellular telephone, caused his cell phone to ring. Mr. Ewing picked up. The person

on the other end wasn't anyone Mr. Ewing knew.  In fact, it wasn't a person at all;

it was a prerecorded voice. The voice advertised solar panels from Sunrun, Inc.  It

was not until Smith showed up at the designated property that Smith confessed that

he was employed by Encor and provide a business card showing that he in fact was

an employee of Encro.

62.     Plaintiff has never heard of Bargain, Sunrun or Encor and had not given

them permission to call him, let alone with a telemarketing robocall. Mr. Ewing

was surprised and frustrated to be interrupted by a prerecorded solicitation to a

phone number that had long been on the National Do No Call Registry.

Previously, in March of 2018, a call to 619-719-9640 caused Mr. Ewing's cell

phone to ring again. Again it was a prerecorded voice, again advertising solar panels, again from Sunrun.

63.     It didn't stop there. *Encor Solar placed at least 13 telemarketing robocalls to Mr. Ewing.* The initial call on September 26,2018 came from 619-824-3342 which turns out to be a totally spoofed phone number.  The agent on the phone said he was with the San Diego Energy Center.  The agent said his name was Andrew on the second call and he said that Garrett Smith would be coming out to the property for the solar panel consultation.  Andrew stated he was with Sunrun headquartered in San Fraincisco.

64.     Most of these robocalls used a prerecorded or artificial voice, while the rest were marked by an unnatural click or pause at the beginning—signaling to Mr. Ewing that the call was placed by an ATDS rather than manually dialed by a person.

65.     More than a dozen of Encor Solar's telemarketing robocalls were made to Mr. Ewing while he was in California, in this District.

66.     More than a dozen of Encor Solar's telemarketing robocalls were made to Mr. Ewing after Encor Solar knew of his desire to never been solicited via telemarketing calls, which is publicly known in this District.

67.     Mr. Ewing repeatedly asked Encor Solar to stop calling.

18CV

68.     Due to the massive volume of robocalls made by Defendant Encor to him, Plaintiffs' investigation into the calls and their illegal features (e.g., prerecorded voices and placement by an ATDS, as manifested by beginning with an unnatural click or pause) is ongoing. Based on what is known to Plaintiff so far, the following table summarizes some of the non-emergency telemarketing robocalls placed by Encor Solar to Plaintiff:

## VII. FIRST CLAIM FOR RELIEF

**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))**

69.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

70.     The foregoing acts and omissions of Encor Solar and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to the cellular telephone numbers of Plaintiffs without prior express written consent.

71.     Sunrun, Smith, Larkin, Berges and Bargain are affiliates and agents of Encor.

72.     Each named defendant in this matter is vicariously liable for the acts and actions of each of the other named defendants under the *Gomez* case from the US Supreme Court handed down on January 20, 2016.

73.     Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

74.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

75.     Plaintiff also seek a permanent injunction prohibiting Encor Solar and its affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without prior express written consent of the called party.

## VIII. SECOND CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Residential Telephones, 47 U.S.C. § 227(b)(1)(B))

76.     Mr. Ewing realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

77.     The foregoing acts and omissions of Encor Solar and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(B), by making non-emergency prerecorded telemarketing calls to the residential telephone 619-987-2016 number of Mr. Ewing without prior express written consent.

78.     Sunrun, Smith, Larkin, Berges and Bargain are affiliates and agents of Encor.

79.     Mr. Ewing is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

18CV

80.     Mr. Ewing is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

81.     Mr. Ewing also seeks a permanent injunction prohibiting Encor Solar and its affiliates and agents from making non-emergency prerecorded telemarketing calls to residential telephone numbers without prior express written consent of the called party.

## IX. THIRD CLAIM FOR RELIEF

**(Telemarketing Solicitations to National Do Not Call Registrants, 47 U.S.C. § 227(c))**

82.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

83.     The foregoing acts and omissions of Encor Solar and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(c), by making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry. 47 C.F.R. §64.1200(c)(2).

84.     Sunrun, Smith, Larkin, Berges and Bargain are affiliates and agents of Encor.

85.     Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

18CV

86.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

87.     Plaintiff also seeks a permanent injunction prohibiting Encor Solar and its affiliates and agents from making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry.

## X. FOURTH CLAIM FOR RELIEF

### (Unfair Competition, Cal. Bus. & Prof. Code §§ 17200 *et seq.*)

88.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

89.     Encor Solar's TCPA violations targeted consumers and businesses in the State of California, including Plaintiffs, in violation of the "unlawful" prong of the UCL. *O'Connor v.Lyft, Inc.*, No. 16-cv-00351-JSW, 2016 U.S. Dist. LEXIS 153705, at *14 – 15 (N.D. Cal. Apr.14, 2016).

90.     Additionally, Encor Solar's misconduct violated the "unfair" prong of the UCL. It was unfair for Mr. Ewing's private life and business affairs to be interrupted by prerecorded telemarketing calls dozens of times, like a nightmare from which he could not awake. It was unfair that these robocalls kept pouring in even after Mr. Ewing's objections to them. It was unfair that Defendant's conduct distracted Plaintiff from serving his customers: California consumers. It was unfair

that Plaintiff had to endure these nuisances despite having gone to the trouble of registering his numbers with the National Do Not Call Registry precisely to avoid such invasions of his privacy. Given that the unfair prong of the UCL "is intentionally broad, thus allowing courts maximum discretion," *State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1103 (2d Dist. 1996), Encor Solar's harassment would have violated the UCL even in the absence of the TCPA.

91.     Plaintiff seeks a permanent injunction prohibiting Encor Solar and its affiliates and agents from continuing to violate the UCL by making unsolicited telemarketing robocalls to consumers and businesses in the State of California.

92.     Larkin also sent two written emails to Plaintiff on or about September 26, 2018, each of which contained an extortionate threat under Penal Code section 519 and 523.  Plaintiff will amend this Complaint when discovery allows and more facts are gathered to fully establish a cause of action for civil extortion by Larkin against Plaintiff.  Larkin is hereby put on notice of this intended claim.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against all Defendants, jointly and severally, as follows:

A. Leave to amend this Complaint to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Encor Solar, Larkin, Smith and Sunrun violate the TCPA, CIPA and the UCL;

C. An order enjoining Encor Solar, Larkin, Smith and Sunrun and its affiliates and agents from engaging in the unlawful conduct set forth herein, including violation of 47 USC §501;

D. An award to Plaintiff of damages, as allowed by law under the TCPA, and not limited to the calls listed in the preliminary table above;

E. For statutory damages in the amount of $5,000 per violation pursuant to California Penal Code §637.2(a)(1) or, if greater, three times actual damages as provided in California Penal Code §637.2(a)(2);

F. $500 plus threefold damages for intentional or willful violation of the Do-Not-Call Registry for each and every call;

G. For punitive damages in an amount to be determined with exactness at trial herein;

H. For a preliminary and permanent injunction to restrain further violations of the CIPA, pursuant to California Penal Code §637.2(b);

I. For the payment of reasonable attorneys' fees and costs of suit incurred herein under all applicable statutes and rules including under Cal. Civ. Proc. Code §1021.5 for attorneys that have been or will be hired;

18CV

J.  For an injunction prohibiting all Defendants from ever contacting Plaintiff ever again in any manner whatsoever, including spam texting, robodialing, and spam emailing;

K.  $1,500 for each violation of 16 CFR §610.4(b)(iii)(B) initiating a call to a DNC registered number;

L.  $1,500 for each violation of 47 CFR §64.1601(3) caller ID spoofing;

M. $1,500 for each violation of 47 CFR §64.1200(d)(1) failure to provide copy of written do not call policy;

N.  $1,500 for each violation of 47 CFR §64.1200(b)(1) failure to state name of business at beginning of call;

O.  $1,500 for each violation of 47 USC §227(b)(1)(A)(iii) willful or knowing call to cellular phone;

P.  $1,500 for each violation of 47 USC §227(b)(1) for using an ATDS;

Q.  $1,500 for each violation of 47 USC §227(c) and (d) for calling a phone number on the DNC registry; and

R.  For any other relief that the Court deems just and proper.

## XI. DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

Dated:  September 27, 2018

/S/ *Anton Ewing*
Anton Ewing, Plaintiff

PLAINTIFF'S COMPLAINT FOR VIOLATIONS UNDER TCPA - 35

18CV

```
DUPLICATE

Court Name: USDC California Southern
Division: 3
Receipt Number: CAS104948
Cashier ID: cdelgado
Transaction Date: 09/27/2018
Payer Name: ANTON EWING
------------------------------------
CIVIL FILING FEE
 For: ANTON EWING
 Case/Party: D-CAS-3-18-CV-002247-001
 Amount:        $400.00
------------------------------------
CASH
 Amt Tendered:  $400.00
------------------------------------
Total Due:      $400.00
Total Tendered: $400.00
Change Amt:     $0.00



There will be a fee of $53.00
charged for any returned check.
```