UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTON EWING,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>ENCOR SOLAR, LLC et al.,<br><br>　　　　　　　　　Defendants. | Case No.: 18-CV-2247-CAB-MDD<br><br>**ORDER ON MOTION TO DISMISS**<br>**[Doc. No. 27]** |

This matter comes before the Court on Defendants Encor Solar, LLC ("Encor") and Daniel Larkin's ("Larkin") Motion to Dismiss Under Fed. R. Civ. P 12(B) for Lack of Personal Jurisdiction and for Failure to State a Claim Upon Which Relief Can be Granted [Doc. No. 27]. The motion has been fully briefed, and the Court finds it suitable for determination on the papers submitted and without oral argument in accordance with Civil Local Rule 7.1(d)(1). For the following reasons, Defendants' motion is granted.

**I.　Background**

On September 27, 2018, Plaintiff Anton Ewing filed suit for violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C §§ 227(b)(1)(A), (b)(1)(B) and (c), and California's Unfair Competition Law section 17200 *et seq*. [Doc. No. 1.] Plaintiff named Encor; Larkin, an officer of Encor; Garrett Smith, a manager of Encor; Sunrun Inc,

a Delaware corporation; Bargain Electricity, Inc., a Florida corporation; and Reinaldo A. Berges, an officer of Bargain Electricity, as defendants.

On October 22, 2018, Defendants Encor and Larkin filed a motion to dismiss for lack of jurisdiction. [Doc. No. 9.]

On November 2, 2018, Plaintiff filed the First Amended Complaint ("FAC") asserting TCPA and California Invasion of Privacy Act claims. [Doc. No. 20.] Generally, the FAC alleges that beginning in March of 2018, Plaintiff received at least 13 unsolicited calls from defendants to his cellular phone and home phone. [*Id.* at ¶¶ 22, 31, 53, 82, 92, 115, 117.] Plaintiff contends that these calls were made using an automatic telephoned dialing system ("ATDS") to sell him Sunrun's solar panels. [*Id.* at ¶¶ 25, 27, 119.] Plaintiff maintains that he did not request to be contacted by any of the defendants. [*Id.* at ¶¶ 32, 121.] Additionally, Plaintiff alleges that both phone numbers are on the National Do-Not-Call Registry and that he informed Sunrun back in 2015 to never telemarket him and repeatedly asked Encor to stop calling him. [*Id.* at ¶¶ 32, 122.] Further, the FAC contains specific allegations regarding Mr. Larkin. [*Id.* at ¶¶ 41-49, 51.]

The FAC asserts venue is proper here pursuant to 28 U.S.C. § 1331 and that the Court's exercise of jurisdiction is warranted because the calls were made to Plaintiff while he was in California and defendants have sufficient contacts with California. [*Id.* at ¶¶ 62-66.] The FAC's Prayer for Relief includes amongst others a request for statutory damages, punitive damages, along with injunctive relief. [*Id.* at 46-48.[1]]

On November 19, 2018, Defendants Larkin and Encor both moved for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Larkin, individually, moved to dismiss pursuant to Rule 12(b)(2). [Doc. No. 27.] On December 10, 2018, Plaintiff filed his opposition [Doc. No. 41] and Defendants filed a reply [Doc. No. 42].

---

[1] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(2) allows a district court to dismiss an action for lack of personal jurisdiction. "Where defendants move to dismiss a complaint for lack of personal jurisdiction, plaintiffs bear the burden of demonstrating that jurisdiction is appropriate." *Dole Foods Co. Inc. v. Watts,* 303 F. 3d 1104, 1108 (9th Cir. 2002). "The court may consider evidence presented in affidavits to assist in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.,* 248 F.3d 915, 922 (9th Cir. 2011) (citing *Data Disc, Inc. v. Sys. Tech. Ass'n, Inc.,* 557 F.2d 1280 (9th Cir. 1977)).

A court's power to excise personal jurisdiction over a non-resident defendant is limited by two independent constraints, namely the applicable state personal jurisdiction statute and the constitutional principles of due process. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990); *see also In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013) ("[p]ersonal jurisdiction over a nonresident defendant is proper if permitted by a state's long-arm statute and if the exercise of that jurisdiction does not violate federal due process."). "Under California's long-arm statute, California state courts may exercise personal jurisdiction 'on any basis not inconsistent with the Constitution of this state or of the United States.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014) (quoting Cal. Civ. Proc. Code Ann. § 410.10 (West 2004)). Thus, "the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-801 (9th Cir. 2004)).

Under the Due Process Clause of the Fourteenth Amendment, to exercise personal jurisdiction over an out-of-state defendant, the defendant must have "certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted)). This minimum contacts jurisdiction may be either "general or all-purpose jurisdiction," or "specific or case-linked jurisdiction." *Id.* at 919 (citing *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

1  Under Rule 12(b)(1), a defendant may move to dismiss based on the court's lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This is because a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief … [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III. Discussion

Both defendants move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that all of Plaintiff's claims have not been pled with the requisite specificity and under Rule 12(b)(1) asserting that Plaintiff has failed to allege sufficient facts to meet Article III standing requirements. In addition, Defendant Larkin moves for dismissal under Rule 12(b)(2) contending that he lacks sufficient minimum contacts with the state of California to warrant the exercise of personal jurisdiction over him.

**A. Personal Jurisdiction**

Defendant Larkin moves to dismiss for lack of either specific or general personal jurisdiction because he is a citizen of Utah with virtually no contacts with California. [Doc. No. 27-1 at 13-22.] Relatedly, Larkin asserts that Plaintiff has not established jurisdiction via his alter-ego theory of liability because Ewing failed to make a prima facie showing that Larkin is the alter ego of Encor. [*Id.* at 16-18.]

For the Court to exercise general jurisdiction over Larkin his contacts with California must be "so continuous and systematic as to render [him] essentially at home [here]." *Daimler AG,* 134 S.Ct at 761. In order to establish specific jurisdiction, Ewing must demonstrate that Larkin "has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities."[2] *Avocent*, 552 F.3d at 1330 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985) (internal quotations and citations omitted)). The focus is on the "relationship among the defendant, the forum, and the litigation." *Daimler AG*, 134 S.Ct. at 758.

Here, because the motion to dismiss for lack of jurisdiction is based on affidavits and documents, Plaintiff is required to make a prima facie showing that Larkin is subject to personal jurisdiction in California. *See Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1154 (9th Cir. 2006). The uncontroverted allegations in the complaint must be taken as true and factual conflicts must be resolved in Plaintiff's favor. *Marvix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218, 1223 (9th Cir. 2011). In order to survive the motion to dismiss, Plaintiff must show that Larkin has minimum contacts with the forum state as will allow exercise of personal jurisdiction over him but, "bare formulaic accusations" that Larkin maintains sufficient contacts with California are inadequate. *Schwarzenegger*, 374 F.3d at 800.

---

[2] The Ninth Circuit uses a three-prong test to determine whether a non-resident defendant is subject to specific personal jurisdiction: (1) [t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. *Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden of satisfying the first two requirements and if successfully met, the "burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Id. at 801-802. The first prong of the test includes both purposeful availment and purposeful direction and "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities in the forum; or by some combination thereof." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

In support of his motion, Larkin has submitted a declaration in which he attests that he is a resident of Utah, where he is maintained his principal and only residence since April 4, 2014. [Doc. No. 27-2 ¶ 4.[3]] Larkin declares that he is the Chief Executive Officer of Encor, a Utah LLC. [*Id.* at ¶ 3.] Larkin also declares that he does not presently own or lease any real property in California, he does not sit on any boards in California, does not pay taxes in California, does not maintain a bank account in California and has never held a California driver's license. [*Id.* at ¶¶ 8, 9, 10, 11.] In addition, Larkin declares that his and Encor's finances, including bank accounts, are maintained and managed separately, stating that he "take[s] care to maintain and observe the corporate formalities of Encor." [*Id.* at ¶¶ 11, 13.] Further, Larkin attests that in 2013 he lived in California for 8 months and since leaving he has periodically visited the state for family vacations and industry-related conventions. [*Id.* at ¶ 7.] Larkin also declares that he does not consent to the jurisdiction of California. [*Id.* at ¶ 14.]

In opposition, Plaintiff alleges that jurisdiction exists over Larkin because Larkin signed and filed Form LLC-12, Statement of Information, and Form LLC-5, Application to Register a Foreign Limited Liability Company with California's Secretary of State thereby registering Encor as a company within California. [Doc. No. 41. at 14.] Plaintiff concludes:

> Larkin has confessed to unity of interest and ownership as he is the sole Member, the sole Manager and the CEO. There are no partners and no other persons involved that direct or control Encor. Larkin is the only shot-caller. Encor is worthless. It has no money and no assets. It is severely undercapitalized and Larkin uses whatever money is left in the Encor bank account to pay for his personal, non business expenses. It would be an inequitable result if the criminal acts in question are treated as those the [sic] LLC alone.

---

[3] The Court declines to take judicial notice of the documents in 17-cv-02507-LAB-MDD referenced on page 15 of Defendants' motion as the documents are not properly before the Court.

[*Id.* at 16]. Along with his response Plaintiff attached a declaration from himself [*Id.* at 27-31], copies of the Form LLC-12 [*Id.* at 36] and Form LLC-5 [*Id.* at 38-39] a copy of Garrett Smith's business card [*Id.* at 41] and a copy of Daniel Larkin's LinkedIn Profile [*Id.* at 43-46].

The Court begins its analysis by noting that the affidavit Plaintiff filed in support of his opposition is of little help to the Court as it simply restates many of the unsubstantiated conclusions of the FAC, contains information not pertinent to the current lawsuit, and leaves the Court with questions regarding some of the statements contained within the declaration. For example the declaration states "Mr. Larkin uses Encor Solar, LLC to pay for his personal expenses" and that "Larkin signed contracts with Sunrun with Encor as a party to said contracts…" yet Ewing provides no information as to how he could have personal knowledge of this information. [*See, e.g.,* Doc. No. 41 at 27, ¶¶ 13, 39.] Such statements call into the veracity of the contents of the affidavit, although it has been submitted under penalty of perjury. And while Ewing attests to the contents of emails between himself and defendants Larkin and Berges, the emails are not attached to the declaration for the Court to compare with Plaintiff's characterization. [*See, e.g.*, *id.* at 27, ¶¶ 37, 38.]

Setting aside the allegations regarding the alter ego relationship between Larkin and Encor, the FAC summarily concludes that Larkin used an ATDS to call Plaintiff's cell phone and home phone, and alleges Larkin sent Plaintiff a handful of emails. [*See* Doc. Nos. 20 at ¶¶ 8, 44, 45, 47, 48.] However, Ewing has not plausibly alleged that Larkin was the one who used an ATDS to call him, neither directly ordered the use of the ATDS, nor recorded a call between the two individuals that would permit an exercise of jurisdiction. By simply sending emails and signing and filing the requisite forms on behalf of Encor, Larkin has not purposefully availed himself of the benefits of California's laws. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (the "purposeful availment requirement ensures that a defendant will be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts."). Nothing before the Court suggests that Larkin is

essentially at home in California that allows for the exercise of general jurisdiction nor suggests that Larkin has engaged in several acts in the forum, or even so much as hints at any conduct on Larkin's part that was expressly aimed at the forum state that necessitates the exercise of specific jurisdiction. Plaintiff's bare formulaic allegations to the contrary are inadequate. *Schwarzenegger*, 374 F.3d at 800.

The Court therefore concludes that Larkin's actions do not connect him with California in a way sufficient to subject him to the personal jurisdiction of this Court. Because Plaintiff has failed to establish that Larkin purposefully availed himself of the privilege of conducting activities in California, the Court need not address whether the suit arises out of or resulted from Larkin's forum related activities or whether exercising jurisdiction would be reasonable. *See Pebble Beach*, 453 F.3d at 1155 (concluding that because plaintiff's claim failed the first prong of the minimum contacts test "we need not address whether the claim arose out of or resulted from Caddy's forum-related activities or whether an exercise of jurisdiction is reasonable per the factors outlined by the Supreme Court in *Burger King Corp.*, 471 U.S. 462, 476-77 [] (1985).").

The Court also finds Plaintiff's alter ego argument offered as a grounds for exercising jurisdiction over Larkin unavailing. Plaintiff argues that because Larkin is the alter ego of Encor, the Court may disregard the corporate form and exercise jurisdiction over Larkin as a result of Encor's contacts with California. In addressing Larkin's interest in and ownership of Encor the FAC pleads: Larkin set up Encor to commit crimes [Doc No. 20 at ¶ 41]; "By engaging in criminal activity through the Encor LLC entity, Larkin takes on those acts as if done personally by Larkin [*Id.* at ¶ 42]; Larkin "runs, owns, directs and controls every aspect of Encor. Encor is the alter ego of Larkin and Larkin is using Encor to commit his telemarketing scams and frauds." [*Id.* at ¶ 43] and; Larkin does not respect the "Encor formalities of entity operation" [*Id.* at ¶ 46]. Additionally, in his response in opposition, Plaintiff claims that the requirements necessary to invoke the alter

ego doctrine[4] have been pled. [Doc. No. 41 at 14-16.] Plaintiff also posits that evidence of the alter ego relationship between Encor and Larkin is provided by the forms filed with the Secretary of State. [*Id.*]

In essence all that is before the Court are perfunctory and conclusory statements not supported by facts, which are insufficient as a matter of law to support a finding of alter ego. *See Davis v. Metro Prods. Inc.*, 885 F.2d 515, 520 (9th Cir. 1989) ("Because the corporate form serves as a shield for the individuals involved for purposes of liability as well as jurisdiction, many courts search for reasons to 'pierce the corporate veil' in jurisdictional contexts parallel to those in liability contexts."). *See also Katzir's Floor & Home Design, Inc. v. M-MILS.com.*, 394 F.3d 1143, 1149 (9th Cir. 2004) (holding "mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law," noting, "[e]ven if the sole shareholder is entitled to all of the corporation's profits, and dominated and controlled the corporation, the fact is sufficient by itself to make the shareholder personally liable"); *Leek v. Cooper,* 194 Cal. App. 4th 399, 414 (2011) (finding an "allegation that a person who owns all of the corporate stock and makes all of the management decisions is insufficient to cause the court to disregard the corporate entity"). Neither is the Court persuaded that the signing and filing of the requisite forms provides a basis for finding vicarious liability. The factual allegations in the FAC are insufficient for the Court to disregard Encor's corporate form. As a result, the Court cannot assert jurisdiction over Larkin simply because of his association with Encor. *See Davis,* 885 F.2d at 520 ("a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person.").

---

[4] To establish liability under an alter ego theory in California there are two general requirements: "(1) that there by such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985) (citation omitted).

Having determined that exercising jurisdiction over Larkin, a resident of Utah, under any of the theories claimed is not warranted, Defendant Larkin's motion to dismiss for lack of personal jurisdiction is **granted**.

**B. The TCPA violations**

As to the TCPA violations, Defendant Encor contends Plaintiff has failed to allege facts showing that Encor called Plaintiff or that it used an ATDS.

To successfully plead a TCPA claim, a plaintiff must allege defendant (1) called a cellular telephone number . . . or any service for which the called party is charged for the call; (2) using an ATDS or an artificial or prerecorded voice; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1); *Los Angeles Lakers, Inc. v. Fed. Ins. Co.,* 869 F.3d 795, 804 (9th Cir. 2017) (quoting *Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1043 (9th Cir. 2012). To "make" a call under the TCPA the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call. *Gomez v. Campbell-Ewald, Co.,* 768 F.3d 871, 877-79 (9th Cir. 2014) (discussing the circumstances when liability can attach under the TCPA). An ATDS is "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

Here, Plaintiff is suing six different defendants and generally alleges that he was called at least 13 times, and that each defendant used an ATDS to call his cell phone and home phone. [Doc. No. 20 at ¶¶ 6-11, 22.] Defendant's argument that Plaintiff has failed to sufficiently identify the role of each defendant is compelling. The FAC contains confusing factual allegations regarding which defendant allegedly called Ewing. *See generally,* Doc. No. 20 at ¶¶ 12, 35, 22, 26, 31, 63, 92, 117.][5] For example it is alleged that

---

[5] The FAC also alleges that in 2015 Sunrun contracted with MaxPower to illegally sell its solar panels to Ewing, [Doc. No. 20 at ¶ 12]. Further, the FAC alleges that "Sunrun called Plaintiff from 424-999-1333 on August 21, 2015, at 10:44AM through Sunrun employee Alan Reyes to sell solar panels." [*Id.* at ¶ 22]

Sunrun contacted and directed Bargain Electricity to illegally telemarket Ewing and that Bargain Electricity initiated the primary telemarketing calls to Plaintiff and then sold, transferred and provided the lead to the other defendants. [*Id.* at ¶¶ 24, 63.] Such allegations make it difficult for the defendants, and the Court, to evaluate the claims against each of them. When suing multiple defendants, plaintiff must differentiate his allegations against each defendant and should not lump defendants together without distinguishing the alleged wrongs amongst defendants. *See* Fed. R. Civ. P 8; *see also Herrejon v. Ocwen Loan Servicing, LLC,* 980 F. Supp. 2d 1186, 1196 (E.D. Cal. Nov. 1, 2013) ("A plaintiff suing multiple defendants "must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim to put defendants on sufficient notice of the allegations against them.") (quoting *Gauvin v. Trombatore,* 682 F. Supp. 1067, 1071 (N.D. Cal. 1988)).

Similarly, Defendant's assertion that Plaintiff has not adequately alleged an agency relationship between the defendants is persuasive. [Doc. No. 27-1 at 24-25.] "Under traditional agency principals, an entity may be liable for actions it did not itself take when the unlawful acts were performed by an agent of that entity." *Linlor v. Five9, Inc.,* Case No: 17cv218-MMA (BLM), 2017 WL 5885671, at * 2 (S.D. Cal, Nov 29, 2017) (citations omitted). "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Mavrix Photographs, LLC v. LiveJournal, Inc.,* 873 F.3d 1045, 1054 (9th Cir. 2017) (as amended) (quoting Restatement (Third) of Agency § 1.01 (2006)). "For an agency to exist, an agent must have authority to act on behalf of the principal and the person represented must have a right to control the actions of the agent." *Jones v. Royal Admin.*

---

Additionally, the FAC alleges that on a number of unspecified occasions, "Andrew for Sunrun called Plaintiff." [*Id.* at ¶ 31.]

*Servs., Inc.,* 887 F.3d 443, 448 (2018) (internal quotation marks and citations omitted). Thus, for Encor to be liable under an agency theory Plaintiff must show that it controlled or had the right to control Sunrun, Bargain Electricity and the other named defendants - specifically the manner and means of all the calls made to Ewing. Plaintiff can also establish vicarious liability under an alter ego theory if he can show that "(1) the parent must control the subsidiary to such a degree as to render the latter the mere instrumentality of the former, and (2) failure to look past the corporate entity would sanction a fraud or promote injustice." *Panacci v. A1 Solar Power, Inc.,* Case No. 15-cv-00532-JCS, 2015 WL 3750112, at *7 (N.D. Cal. June 15, 2015) (internal quotation marks and citation omitted); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012) ("A party can be vicariously liable if it is an alter ego of a party engaging in wrongdoing.")

The FAC does not meet these pleading standards, instead offering confusing allegations regarding the role each of the defendants played in the purported scheme, often using defendants' names interchangeably and switching the theory of control. First, Plaintiff complains that Sunrun has exercised control over Encor and Bargain Electricity, expressly told them what to do, and that each of the calls were made on behalf of Sunrun, identifying Sunrun as the "principal." [Doc. No. 20 at ¶ 27, 29, 59]. In other portions of the FAC, it is alleged that Sunrun, Smith, Larkin, Berges and Bargain are affiliates and agents of Encore. [*Id.* at ¶ 126.] Plaintiff also summarily alleges that each defendant co-conspired with the other, with every defendant knowing each other's' duties and responsibilities regarding the telemarketing scam. [*Id*. at ¶ 108.] Further, Plaintiff contends:

> *Encor Solar placed at least 13 telemarketing robocalls to Mr.* Ewing. The illegal call on September 26, 2018 came from 619-824-3342 which turns out to be a totally spoofed home number. The agent on the phone said he was with the San Diego Energy Center. The agent said his name was Andrew on the second call and he said that Garrett Smith would be coming out to the property for the solar panel consultation. Andrew stated that he was with Sunrun headquartered in San Francisco. Andrew stated that Sunrun had also called "back in March" and that he was just following up again. Andrew

> called from 619-824-3342. Andrew called Plaintiff twice on 9/26/2018 in the morning.

[*Id.* at ¶ 117].

Such allegations are insufficient to establish vicarious liability. Plaintiff has failed to plead any facts in support of his conclusory allegations that Encor exercised any control over the other defendants allegedly making the calls to Ewing to establish an agency relationship between them and Encor. *See Iqbal*, 556 U.S at 678 (a complaint does not suffice if it "tenders 'naked assertions' devoid of 'further factual enhancement'"). Accordingly, Plaintiff has failed to adequately allege the first element of a TCPA claim, namely that Encor, or an agent acting on its behalf, called a telephone number belonging to Plaintiff.

As to the second and third elements of a TCPA claim, Defendant does not suggest that Plaintiff has not adequately pled that the alleged calls were made without Plaintiff's consent. Defendant does however challenge the adequacy of the pleading regarding the second element, the use of an ATDS, contending that Plaintiff cannot simply allege that a party used an ATDS to establish standing under the TCPA. [Doc. No. 20 at 24.] Plaintiff alleges that defendants used an ATDS as defined by 47 U.S.C. § 227(a)(1) to place its calls to him in an attempt to solicit Ewing to purchase solar panels and that the calls frequently exhibited signs associated with calls made from ATDs including repeated calls "within a period of time and the presence of a pause or click." [*Id.* at 8-11, 52, 53, 82] While Plaintiff does not specifically set forth allegations that are sufficient on their own to support his claims that an ATDS was used, the Court, accepts as true the factual allegations of the FAC, applies the definition of an ATDS provided by the Ninth Circuit in *Marks v. Crunch of San Diego*, 904 F.3d 1041, 1052 (9th Cir. Sept. 20, 2018)[6], and by drawing on Court's

---

[6] In *Marks,* the Court of Appeals read "§ 227(a)(1) to provide that the term automatic dialing system means equipment which has the capacity – (1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator – and to dial such numbers." 904 F.3d at 1052.

judicial experience and common sense, *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009), finds it is reasonable to infer that the equipment Defendants allegedly used was an ATDs.

Although Plaintiff has successfully pled the second and third elements of a TCPA claim, he has failed to adequately allege that Defendant Encor made a call as required by the statute. As a consequence, Plaintiff's TCPA claims against Encor are **dismissed with leave to amend**.

### C. The CIPA Claim

Defendant moves for dismissal of Plaintiff's CIPA claim on the grounds that it fails to state a claim that is plausible on its face. [Doc. No. 27-1 at 25-26.] Plaintiff's response in opposition makes no argument in defense of the CIPA claim. [*See* Doc. No. 41.]

California enacted an anti-wiretapping and anti-eavesdropping statute designed "to protect the right of privacy." Cal. Penal Code § 630. It prohibits the intentional recording of any communication without the consent of all parties where one of the parties is using a cellular or cordless telephone. *See* Cal. Penal Code § 632.7. A person who has been injured as result of such an invasion of privacy "may bring an action . . . for the greater of the following amounts: (1) Five thousand dollars ($5,000), [or] (2) Three times the amount of actual damages, if any, sustained by the plaintiff." *Id.* § 637.2. The injured person may also request injunctive relief. *Id.*

"Where a plaintiff declines to defend a claim in opposition, the Court is within its discretion to treat plaintiff's silence as abandonment of the claim and concession that the claim be dismissed." *Dare v. Aegis Wholesale Corp.,* Case No.: 15cv2833-JAH (KSC), 2018 WL 4221257, at *4 (citing *Conservation Force v. Salazar*, 677 F.Supp.2d 1203, 1211 (N.D. Cal. 2009) ("Where plaintiffs fail to provide a defense for a claim in opposition, the claim is deemed waived.")); *Hopkins v. Women's Div. Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("[W]hen a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."). By failing to address Defendant's arguments for dismissal of the CIPA claim in his opposition, the Court finds

that Plaintiff has conceded his CIPA claim. Accordingly, Plaintiff's CIPA claim is **dismissed with prejudice**.

IV. **Conclusion**

For the reasons set forth above, Larkin is not subject to personal jurisdiction in this Court. Further, the Court finds that the FAC has not been pled with requisite specificity. Accordingly, it is hereby **ORDERED** that the Motion to Dismiss [Doc. No. 27] is **GRANTED**. Plaintiff's claims against Defendant Larkin are **DISMISSED WITHOUT PREJUDICE** to Plaintiff refiling in a court of competent jurisdiction. Plaintiff's claims against Defendant Encor are also **DISMISSED WITHOUT PREJUDICE** to Plaintiff filing an amended complaint here.[7] Plaintiff may file an amended complaint **no later than February 8, 2019.**

It is **SO ORDERED**.

Dated: January 22, 2019

_____
Hon. Cathy Ann Bencivengo
United States District Judge

---

[7] Having determined that Plaintiff has not properly pled his claims, the Court declines to address Defendant's alternate argument for dismissal, namely lack of Article III standing.